UNITED STATES of America, Plaintiff,

v.

**EL CAMINO COMMUNITY COLLEGE DISTRICT et al., Defendants.**

**No. CV77–4617–RMT.**

United States District Court,
C. D. California.

July 26, 1978.

Drew S. Days, III, Asst. Atty. Gen., Civ. Rights Div., Washington, D. C., Andrea Sheridan Ordin, U. S. Atty. by James Stotter, II, Asst. U. S. Atty., Los Angeles, Cal., by Louie M. Stewart, Sp. Atty., Dept. of Justice, Washington, D. C., for plaintiff.

John H. Larson, County Counsel by Leroy W. Blankenship, Deputy County Counsel, Los Angeles, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TAKASUGI, District Judge.

This is an action for injunctive and declaratory relief filed pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, by the United States of America. The case is before the court on a motion of the plaintiff for preliminary injunction and on a motion of the defendants to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and alternatively, for summary judgment.

This matter was heard on February 24, 1978. The defendants' motion to dismiss, and alternatively, for summary judgment was heard as a motion for summary judgment. In addition, the counsels for the parties agreed at the hearing to consolidate the entire matter as a motion for summary judgment and as a matter for a permanent injunction and declaratory relief. Counsels agreed there was no genuine issue as to any material fact and that this matter presented only a question of law, to wit; whether the scope of authority of the Office for Civil Rights to investigate compliance with Title VI of the Civil Rights Act of 1964 is limited to investigation of the federally assisted programs or activities of a recipient of federal financial assistance.

The defendants' primary contention is that Title VI applies only to the federally assisted programs or activities and that the scope of investigative authority under Title VI is limited to the scope of authority to terminate federal financial assistance under Title VI. Defendants contend that the Office for Civil Rights is authorized to investigate the programs or activities for which defendant El Camino Community College District receives federal financial assistance through the Department of Health, Education and Welfare, but it is not authorized to investigate beyond the federally assisted programs or activities in order to determine whether the defendants or El Camino College are in compliance with Title VI.

The defendants further contend that the authority of the Office for Civil Rights to investigate the employment practices at El Camino College is limited to investigation of the employment practices in the federally assisted programs or activities where the primary objective of the federal financial assistance is to provide employment.

Another contention of the defendants is that the Office for Civil Rights exceeded the scope of its investigative authority under Title VI by not limiting its investigation to the federally assisted programs or activities.

After careful consideration of the motions, pleadings, affidavits, exhibits, memoranda of points and authorities and oral argument presented by counsels at the hearing, the court denies the defendants' motion for summary judgment, grants a permanent injunction and declaratory relief and makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The Office for Civil Rights (herein "OCR") of the United States Department of Health, Education, and Welfare (herein "HEW") is responsible for administering the provisions of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*

2. Defendant El Camino Community College District (herein "District") is a public community college district organized and operated pursuant to the laws of the State of California.

3. The District operates one college, El Camino College (herein "ECC"), which is located in the City of Torrance, County of Los Angeles, State of California.

4. At all times material to this action, the District has been receiving, and continues to receive, federal financial assistance through HEW.

5. During the fiscal year July 1, 1976 to June 30, 1977, the annual budget of the District was $29,437,304 of which $1,838,313 was federal financial assistance received by the District from HEW. In the current fiscal year, July 1, 1977 to June 30, 1978, the annual budget of the District is $31,-539,818 of which $1,121,883 is federal financial assistance received by the District from HEW.

6. Defendant Stuart E. Marsee (herein "Marsee") is the Superintendent of the District, President of ECC, and the person primarily responsible for implementing the rules, regulations, and policies of the District's Board of Trustees within ECC.

7. On February 3, 1965, Marsee executed on behalf of the District an "Assurance of Compliance with the Department of Health, Education and Welfare Regulation under Title VI of the Civil Rights Act of 1964."

8. According to the Affidavit of Marsee, at the time he executed the Assurance of Compliance and subsequent thereto, neither he nor the District intended to authorize OCR unlimited access to the employment and educational records of the District or of ECC concerning programs or activities for which no federal financial assistance was received or to enlarge the scope of the assurance to include non-federally funded programs or activities.

9. OCR received a complaint from the Council of Chicano Organizations on October 5, 1973 and other information alleging that ECC utilized discriminatory practices and procedures against Spanish-surnamed students in employment and delivery of educational services.

10. Beginning on June 18, 1974, a series of meetings and oral and written communications commenced between representatives of OCR and school officials of ECC for the purposes of investigating the charges of discrimination and determining whether the defendants are in compliance with Title VI and the HEW Regulation under Title VI, 45 C.F.R. Part 80.

11. The investigative attempts of OCR have consisted of requests to ECC to provide OCR access to certain data and information regarding ECC's employment practices and its practices and procedures in delivery of educational services to students.

12. Since June 18, 1974, the defendants have refused to voluntarily comply with OCR's request for data and information unless such request is limited to the programs or activities for which the District receives federal financial assistance through HEW.

13. The defendants' position on the matter of voluntary compliance with OCR's request has remained unchanged even though on June 4, 1975, OCR notified Marsee by letter that ECC's refusal to supply the requested data and information is in noncompliance with Title VI and that additional efforts would be made to secure voluntary compliance. Nevertheless, the defendants continued to refuse to voluntarily comply with OCR's request.

14. On May 27, 1977, OCR again notified Marsee by letter that ECC is in noncompliance with Title VI. The letter stated that OCR had determined under 45 C.F.R. § 80.6(b) that ECC is not in compliance with Title VI, that OCR has exhausted the possibilities of securing compliance through informal conferences and other voluntary means, and that the matter would be referred to HEW's regional attorney with a request to initiate formal administrative enforcement proceedings against ECC.

15. On November 3, 1977, the Director of OCR notified Marsee by letter that the matter of ECC's noncompliance with Title VI would be referred to the United States Department of Justice for enforcement proceedings and that defendants would have ten days from the date of the letter to voluntarily comply with OCR's request.

16. As a result of defendants' continued failure and refusal to provide OCR with the requested information even after OCR's efforts to secure voluntary compliance pursuant to 45 C.F.R. § 80.8, on December 12, 1977, plaintiff United States of America filed a complaint seeking an order from the court declaring that defendants' noncompliance with OCR's request violates Title VI, the HEW Regulation under Title VI and the Assurance of Compliance, and enjoining the defendants from refusing to permit OCR access to the data and information which is pertinent and necessary to enable OCR to determine whether the defendants are in compliance with Title VI and the HEW Regulation under Title VI, 45 C.F.R. Part 80.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. § 1345 and 42 U.S.C. § 2000d, *et seq.*

2. Rule 12(b) of the Federal Rules of Civil Procedure provides that when a motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56 of the Federal Rules of Civil Procedure. In this action, the defendants made a motion pursuant to Rule 12(b)(6), the parties presented matters outside the pleadings which have not been excluded by the court, there is no genuine issue of material fact, and this matter presents a question of law. Therefore, the court treats the motion to dismiss as one for summary judgment.

In addition, the counsel for the parties agreed at the hearing to consolidate the entire matter as a motion for summary judgment and as a matter for a permanent injunction and declaratory relief since there is no genuine issue as to any material fact and this matter presents only a question of law.

■ 3. As a recipient of federal financial assistance through HEW, the District is subject to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, and the HEW Regulation under Title VI, 45 C.F.R. Part 80.

4. Title VI prohibits discrimination on the basis of race, color, or national origin in any federally assisted program or activity. Section 601 of Title VI, 42 U.S.C. § 2000d, provides:

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

5. In order to effectuate the remedial purpose of Title VI, the statute should be liberally construed. As stated in 3 Sutherland, *Statutes and Statutory Construction*, § 72.05 at 392 (4th Ed.1974), ". . . civil rights acts are remedial and should be liberally construed in order that their beneficent objectives may be realized to the fullest extent possible. To this end, courts favor broad and inclusive application of statutory language by which the coverage of legislation to protect and implement civil rights is defined." See *Bob Jones University v. Johnson*, 396 F.Supp. 597, 604 (D.S.C. 1974), *aff'd* 529 F.2d 514 (4th Cir. 1975).

Furthermore, the construction of a statute by the agency charged with its administration is entitled to be accorded great weight. *N. L. R. B. v. Bell Aerospace Co.*, 416 U.S. 267, 274–275, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *Norwegian Nitrogen Co. v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933).

6. Section 602 of Title VI, 42 U.S.C. § 2000d–1, provides HEW with the power to issue "rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken." See *Lau v. Nichols*, 414 U.S. 563, 567, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974). This section also provides that compliance with any requirement adopted pursuant to this section may be effected by termination of federal financial assistance proceedings or "by any other means authorized by law."

The regulations promulgated by HEW pursuant to Section 602 of Title VI are contained in 45 C.F.R. Part 80. The validity of these regulations is not at issue in this action as neither party has raised any constitutional or other challenges to the regulations.

7. The nature and scope of an OCR investigation of a recipient of federal financial assistance to determine whether the recipient is in compliance with Title VI may be determined by a complaint filed with OCR, but OCR is not limited to an investigation of the allegations in the complaint. According to 45 C.F.R. § 80.7(c), OCR has the following investigative authority:

"The responsible Department official or his designee will make a prompt investigation whenever a compliance review, report, complaint, or any other information indicates a possible failure to comply with this part. The investigation should include, where appropriate, a review of the pertinent practices and policies of the recipient, the circumstances under which the possible noncompliance with the part occurred, and other factors relevant to a determination as to whether the recipient has failed to comply with this part."

In addition, 45 C.F.R. § 80.7(a) directs OCR to conduct periodic compliance reviews of the practices of recipients to determine whether they are in compliance with 45 C.F.R. Part 80.

8. According to the pertinent parts of 45 C.F.R. § 80.6, OCR is entitled to obtain the following information in order to determine whether a recipient of federal financial assistance is in compliance with Title VI:

"(b) Compliance reports. Each recipient shall keep such records and submit to the responsible Department official or his designee timely, complete and accurate compliance reports at such times, and in such form and containing such information, as the responsible Department official or his designee may determine to be necessary to enable him to ascertain whether the recipient has complied or is complying with his part. . . ."

"(c) Access to sources of information. Each recipient shall permit access by the responsible Department official or his designee during normal business hours to such of its books, records, accounts, and other sources of information, and its facilities as may be pertinent to ascertain compliance with this part."

Therefore, the HEW regulations provide OCR with the authority to seek and obtain

information which is "pertinent to ascertain compliance" and to determine the amount and type of information that is necessary to enable OCR to ascertain whether a recipient is in compliance with Title VI and the HEW Regulation under Title VI, 45 C.F.R. Part 80.

9. The assurance of compliance, which is required with every application for federal financial assistance through HEW pursuant to 45 C.F.R. § 80.4 and which was executed on February 3, 1965, by Marsee on behalf of the District, is not only applicable to the federally assisted programs or activities as the defendants contend but is applicable to the entire institution unless the contrary is established in accordance with 45 C.F.R. § 80.4(d)(2).

The relevant parts of 45 C.F.R. § 80.4(d) provide:

"(1) In the case of any application for Federal financial assistance to an institution of higher education (including assistance for construction, for research, for special training project, for student loans or for any other purpose), the assurance required by this section shall extend to admission practices and to all other practices relating to the treatment of students.

"(2) The assurance required with respect to an institution of higher education . . . insofar as the assurance relates to the institution's practices with respect to admission or other treatment of individuals as students . . . or to the opportunity to participate in the provision of services or other benefits to such individuals, shall be applicable to the *entire* institution unless the applicant establishes, to the satisfaction of the responsible Department official, that the institution's practices in designated parts or programs of the institution will in no way affect its practices in the program of the institution for which Federal financial assistance is sought, or the beneficiaries of or participants in such programs." (Emphasis added).

The assurance of compliance executed by Marsee on behalf of the District provides that the District "AGREES THAT it will comply with Title VI of the Civil Rights Act of 1964 (P.L. 88–352) and all requirements imposed by or pursuant to the Regulation of the Department of Health, Education and Welfare (45 CFR Part 80) issued pursuant to that title . . ." and "GIVES ASSURANCE THAT it will immediately take any measures necessary to effectuate this agreement." The assurance also states that the "Applicant recognizes and agrees that such Federal financial assistance will be extended in reliance on the representations and agreement made in this assurance" and that the assurance is binding on the Applicant, the successors, transferees, and assignees, and the person or persons authorized to sign the assurance on behalf of the Applicant.

█ Since the terms of the assurance have not been challenged by any of the parties in this action and, as indicated by the Supreme Court in *Lau v. Nichols, supra,* 414 U.S. at 569, 94 S.Ct. at 789 "[t]he Federal Government has the power to fix the terms on which its money allotments to the States shall be disbursed," the defendants are contractually bound to permit OCR to conduct a Title VI investigation and the scope of OCR's *investigative authority* is not confined to investigation of the federally assisted programs or activities.

· Therefore, a pinpoint approach, which requires federal administrative action to be conducted on a program by program basis and which has been applied to limit the *power to terminate* federal funding, is not appropriate in this matter.

10. Even if the pinpoint approach was applicable, it has not been applied as narrowly as defendants contend. The Fifth Circuit in *Board of Public Instruction of Taylor County, Florida v. Finch,* 414 F.2d 1068 (5th Cir. 1969), recognized that a determination to terminate federal funding due to discriminatory practices in a federally funded program cannot be made without consideration of its context and that a discriminatory practice in one part of an educational system may affect the other parts of the system. According to the court, "[i]n

finding that a termination of funds under Title VI of the Civil Rights Act must be made on a program by program basis, we do not mean to indicate that a program must be considered in isolation from its context." The court further added that the administrative agency seeking to terminate federal funds must make findings of fact indicating either that a particular program "is itself administered in a discriminatory manner, or is so affected by discriminatory practices elsewhere in the school system that it thereby becomes discriminatory." 414 F.2d at 1078–1079.

The court also indicated that it is important to note that the purpose of limiting the termination power to "activities which are actually discriminatory or segregated" was not for the protection of the political entity whose funds might be terminated, but for the protection of the innocent beneficiaries of programs or activities not tainted by discriminatory practices. *Ibid.*, 414 F.2d at 1075. Thus, since the purpose of a Title VI investigation is to enable OCR to determine whether a recipient is in compliance with Title VI, to interpret the provisions of Title VI as limiting the scope of OCR's investigative authority to investigation of the federally assisted programs or activities would essentially preclude OCR from effectively discovering and determining whether the defendants herein are in compliance with Title VI and from protecting the beneficiaries of the federally assisted programs or activities even if there was rampant discrimination elsewhere in the college and such discriminatory practices were affecting the federally assisted programs or activities. The distinction between the authority to investigate and the power to terminate should not be lost.

■ 11. Furthermore, OCR has the authority to investigate ECC's employment practices to determine whether there is discrimination on the grounds of race, color, or national origin in the employment practices which affect the students at the college. Section 604 of Title VI, 42 U.S.C. § 2000d–3, provides that administrative action is not authorized with respect to employment

practices except where the primary objective of the federal financial assistance is to provide employment. However, an exception to the provisions of Section 604 of Title VI is contained in 45 C.F.R. § 80.3(c)(3). 45 C.F.R. § 80.3(c)(3) provides:

"Where a primary objective of the Federal financial assistance is not to provide employment, but discrimination on the ground of race, color, or national origin in the employment practices of the recipient or other persons subject to the regulations tends, on the ground of race, color, or national origin, to exclude individuals from participation in, to deny them the benefits of, or to subject them to discrimination under any program to which this regulation applies, the foregoing provisions of this paragraph (c) shall apply to the employment practices of the recipient or other persons subject to the regulation, to the extent necessary to assure equality of opportunity to, and nondiscriminatory treatment of, beneficiaries."

The court in *United States v. Frazer*, 297 F.Supp. 319, 322 (M.D.Ala.1968), stated the following regarding Section 604 of Title VI:

"It is true that § 604 of Title VI makes it clear that Title VI was not intended to be applicable to the employment practices of recipients of Federal assistance 'except where a primary objective of the Federal assistance is to provide employment' or where discrimination in employment causes discrimination to the beneficiaries [citation omitted]. However, the language of § 604 of Title VI also clearly reflects that that section was not intended to detract from any authority that Federal officials might have under other provisions of the law."

The court then concluded that Title VI does not preempt or limit the authority that federal officials have to take affirmative action, including the filing of civil actions, designed to reduce or eliminate racial discrimination.

12. Marsee's assertion that some of the information requested by OCR is confidential is unsubstantiated. The issue of confidentiality is addressed in 45 C.F.R. § 80.6(c) as follows:

"Asserted considerations of privacy or confidentiality may not operate to bar the Department from evaluating or seeking to enforce compliance with this Part. Information of a confidential nature obtained in connection with compliance evaluation or enforcement shall not be disclosed except where necessary in formal enforcement proceedings or where otherwise required by law."

Therefore, the assertion of confidentiality by Marsee may not operate to bar OCR representatives from conducting a Title VI investigation of the defendants.

13. OCR is authorized to seek judicial enforcement of Title VI pursuant to § 602 of Title VI, 45 C.F.R. § 80.8, and the Assurance of Compliance executed by Marsee on behalf of the District which provides that "the United States shall have the right to seek judicial enforcement of this assurance."

14. Furthermore, the court cannot say that HEW or OCR has clearly exceeded its powers or authority or acted contrary to the statute.

15. The defendants' motion for summary judgment is denied on the ground that the defendants have not shown that they are entitled to a judgment as a matter of law.

16. The injunctive and declaratory relief sought by plaintiff is granted. With respect to the balancing of hardships to determine whether the court should issue the permanent injunction, defendants have only made general allegations of burden. Such allegations lack the requisite specificity. The court finds that without the issuance of an order in favor of the plaintiff, the plaintiff would be irreparably injured because the defendants would continue to violate Title VI, the HEW Regulation under Title VI, and the Assurance of Compliance by refusing to comply with OCR's request for data and information which is pertinent to enable OCR to determine whether the defendants are in compliance with Title VI. Without the issuance of such an order, OCR would also be prevented from investigating the allegations that ECC utilized discriminatory practices and procedures against Spanish-surnamed students in employment and the delivery of educational services and hindered in its administration of Title VI. Therefore, the balance is clearly in favor of the plaintiff. The issuance of the permanent injunction is promotive of the public good.