**UNITED STATES of America by Ramsey CLARK, Attorney General, Plaintiff,**

v.

**John S. FRAZER, as Director, Alabama Personnel Department, Tom J. Ventress, as Chairman, State Personnel Board, James A. Simpson, as a Member, State Personnel Board, Ralph W. Adams, as a Member, State Personnel Board, Ruben King, as Commissioner and Director, Alabama Department of Pensions and Security, Rex D. Roach, as Director, Alabama Department of Industrial Relations, Ira L. Myers, as State Health Officer and Director, Alabama Department of Public Health, Ernest Stone, as Superintendent and Director, Alabama Department of Education, J. S. Tarwater, as State Mental Health Officer and Director, Alabama Department of Mental Health, and J. Frank Manderson, as Director, Alabama Department of Civil Defense, Defendants.**

Civ. A. No. 2709–N.

United States District Court

M. D. Alabama, N. D.

Aug. 16, 1968.

Stephen J. Pollak, Asst. Atty. Gen., David L. Rose, Harold Himmelman and Andrew J. Ruzicho, Attys., Civil Rights Division, Dept. of Justice, Washington, D. C., and Ben Hardeman, U. S. Atty., Montgomery, Ala., for plaintiff.

MacDonald Gallion, Atty. Gen., Gordon Madison, Mary Lee Stapp, William N. McQueen, Bernard F. Sykes, Asst. Attys. Gen., State of Alabama, Montgomery, Ala., for defendants Frazer, Ventress, Simpson, Adams, King, Roach, Myers and Tarwater.

MacDonald Gallion and Gordon Madison, Montgomery, Ala., for defendants Stone and Manderson.

James A. Simpson, pro se.

J. Eugene Foster, Gen. Counsel, Dept. of Industrial Relations, Montgomery, Ala., for defendant Roach.

Jamie L. Pettigrew, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for defendant Tarwater.

## ORDER

JOHNSON, Chief Judge.

The United States of America, acting through the Honorable Ramsey Clark, Attorney General, brings this action to enforce the requirements of Federal statutes and regulations that State personnel engaged in the administration of Federally financed grant-in-aid programs be recruited, hired and promoted or demoted on a merit basis, without discrimination on the ground of race or color.[1]

---

1. The Federally financed grant-in-aid programs involved are: Old Age Assistance and Medical Assistance for the Aged, 42 U.S.C. § 302(a) (5); Aid to Families with Dependent Children, 42 U.S.C. § 602(a) (5); Maternal and Child Health and Crippled Children's Services, P.L. 90–248, Title III, §§ 301, 304(a) (42 U.S.C.A. § 705(a) (3)); Child Welfare Services, P.L. 90–248, Title II, § 240 (c) (42 U.S.C.A. § 622); Aid to the Blind, 42 U.S.C. § 1202(a) (5); Aid to the Permanently and Totally Disabled, 42 U.S.C. § 1352(a) (5); Combined Grants for the Aged, Blind, Disabled and Medical Assistance for the Aged, 42 U.S.C. § 1382(a) (5); Medical Assistance, 42 U.S.C. § 1396a(a) (4); Hospital Survey and Construction, 42 U.S.C. § 291d (a) (8); Grants for Comprehensive Health Planning and Public Health Services, 42 U.S.C. § 246(a) (2) (F), § 246 (d) (2) (F); Grants for Unemployment Compensation Administration, 42 U.S.C. § 503(a) (1); Grants for State Public Employment Offices, 29 U.S.C. § 49, P.L. 88–136, Title I, § 101, 20 CFR 602.15;

The defendants Ventress, Simpson and Adams are members of the Alabama State Personnel Board. The defendant John S. Frazer is the Personnel Director and the head of the Personnel Department of the State of Alabama. As Director, Frazer is responsible for the administration of the Alabama Merit System, together with the State Personnel Board. The Board has the authority and responsibility to adopt and amend rules and regulations for the administration of the Alabama Merit System. Defendants King, Roach, Myers, Stone, Tarwater and Manderson are the heads of the State Departments of Pensions and Security, Industrial Relations, Public Health, Education, Mental Health, and Civil Defense, respectively. These departments administer the Federal grant-in-aid programs which are subject to the Federal merit standards statutes set out above in note 1. Each of the defendants has the responsibility, acting within the rules and regulations for the administration of the Alabama Merit System as promulgated by the Alabama State Personnel Board and administered by the Alabama State Personnel Director, for the selection, appointment, promotion, demotion and transfer of personnel and for the recruitment of personnel in his department or agency.

This case is now submitted upon the motions of the defendants filed herein on June 28, 1968 and on July 1, 1968, seeking dismissal upon the pleadings. These motions challenge the right of the United States to bring the action, and, in the motions, the defendants contend that the United States does not have the authority to enforce by judicial proceedings the terms and conditions which Congress, by statute, and Federal officials, by regulation acting pursuant to Congressional authority, have attached to the expenditure of Federal funds. The defendants, in their motions, also challenge the validity of the Federal regulation, 45 CFR 70.4, promulgated by the United States Secre-

taries of Health, Education and Welfare, Labor, and Defense, which requires that states administering programs receiving Federal assistance pursuant to the Federal merit standards statutes, adopt laws, rules and regulations expressly prohibiting discrimination on the ground of race, color, national origin, religious or political affiliation. This regulation also requires that the states provide appropriate procedures for appealing cases of alleged discrimination on any of those grounds.

■■ When reviewing the sufficiency of a complaint against a motion to dismiss, the allegations of the complaint are to be taken as true. No citation of authority is necessary to sustain this basic proposition. Thus, from the allegations of the complaint, defendants have followed and continue to follow a policy of racial discrimination against Negroes in the selection and appointment of employees in the Alabama agencies here involved. Furthermore, this Court is informed by brief of the United States—and this is not denied by the defendants—that the six State agencies involved in this case receive and administer approximately $150,000,000 in Federal funds annually under the merit standards statutes. There is no question but that these discriminatory practices engaged in by the defendants, as the United States alleges in its complaint, constitute violations of the merit system requirements of Federal law. 45 CFR 70.4.

■ Defendants' argument that the enactment of Titles VI and VII of the Civil Rights Act of 1964 "may have nullified" the authority of the Secretaries of Defense, Health, Education and Welfare, and Labor to adopt 45 CFR 70.4, is without merit. Title VII defines "for the purposes of this title" the term "employer" in such a manner as to exclude states or political subdivisions. Section 701(b), 42 U.S.C. § 2000e(b). This exclusion from the coverage of Title VII was not intended to repeal the au-

Work Experience and Training, 42 U.S.C. §§ 2922, 2923; Programs for Older Americans, 42 U.S.C. §§ 3023, 3032; Civil

Defense Financial Assistance, 50 U.S.C. Appendix § 2286(a) (4); and 45 CFR Part 70.

thority conferred by other statutes. The limited definition of "employer" was consistent with the Congressional concern, under Title VII, to prohibit discrimination by commercial enterprises. See Local Union 12, United Rubber, etc., Workers v. NLRB, 368 F.2d 12 (5th Cir. 1966), cert. denied, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99, and United States v. Jefferson County Board of Education, 372 F.2d 836, 883 (5th Cir. 1966), where the United States Court of Appeals for the Fifth Circuit has held that Title VII was not intended to preempt or repeal other provisions of law prohibiting racial discrimination.

■ It is. true that § 604 of Title VI makes it clear that Title VI was not intended to be applicable to the employment practices of recipients of Federal assistance "except where a primary objective of the Federal assistance is to provide employment" or where discrimination in employment causes discrimination to the beneficiaries. United States v. Jefferson County Board of Education, *supra*. However, the language of § 604 of Title VI also clearly reflects that that section was not intended to detract from any authority that Federal officials might have under other provisions of the law. Thus, neither Title VI nor Title VII preempts or limits the authority that Federal officials have to take affirmative action, including the filing of civil actions, designed to reduce or eliminate racial discrimination.

■■ The other substantial ground —and one defendants strenuously urge— concerns whether the United States has the authority to enforce by a judicial proceeding the terms and conditions set forth in Federal statutes and regulations requiring states to follow merit personnel standards. This Court is clear to the conclusion that the United States does have standing to seek judicial enforcement of the terms and conditions of grants of Federal property and that the administrative remedy of termination of assistance was not intended to be and is not exclusive. The argument of the State, if it prevailed, would necessitate this Court's telling the United States of America that the only remedy it had in this case would be to administratively terminate the Federal funds of $150,000,000 a year provided to the State agencies here concerned for assistance to the aged, to families with dependent children, to crippled children's services, for aid to the blind, aid to the permanently and totally disabled, and for other similar programs administered by the defendants for the benefit of United States citizens residing in the State of Alabama.

■■ It is settled law that the United States has the authority to fix the terms and conditions upon which its money allotments to states shall be disbursed. King v. Smith, 392 U.S. 309, 333, 88 S.Ct. 2128, 2141, 20 L.Ed.2d 1118. Upon this point, the United States Supreme Court stated:

"There is of course no question that the Federal Government, unless barred by some controlling constitutional prohibition, may impose the terms and conditions upon which its money allotments to the States shall be disbursed, and that any state law or regulation inconsistent with such federal terms and conditions is to that extent invalid. See Ivanhoe Irrigation District v. McCracken, 357 U.S. 275, 295 [78 S.Ct. 1174, 1185, 2 L.Ed.2d 1313] (1958); Oklahoma v. [United States] Civil Service Comm'n, 330 U.S. 127, 143 [67 S.Ct. 544, 553, 91 L.Ed. 794] (1947)."

The law is also clear that the grant of Federal assistance may be upon conditions *that are attached to the grant* and the *acceptance by the recipient of the grant* to which the conditions and stipulations are attached creates an obligation to perform the conditions on the part of the recipient. United States v. Northern Pacific Ry. Co., 256 U.S. 51, 41 S.Ct. 439, 65 L.Ed. 825, and the cases therein cited. On this point the Supreme Court of the United States stated in McGee v. Mathis, 71 U.S. 143, 155, 18 L.Ed. 314:

"It is not doubted that the grant by the United States to the State upon

conditions, and the acceptance of the grant by the State, constituted a contract. All the elements of a contract met in the transaction—competent parties, proper subject-matter, sufficient consideration, and consent of minds. This contract was binding upon the State * * *."

There is no controlling law to support the defendants' argument that the United States has no standing to enforce its contractual rights in court in the absence of specific statutory authority to do so. The law is to the contrary. Rex Trailer Co. v. United States, 350 U.S. 148, 151, 76 S.Ct. 219, 100 L.Ed. 149. It has long been recognized that the United States has the right to bring suit to require the recipient of Federal grants to comply with the terms and conditions of the grant. United States v. San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050.

The contractual aspects of the relationship between the United States and the State of Alabama concerning these grants aside, there is no necessity for specific statutory authority in order to permit the United States to bring this action. The Federal district courts have jurisdiction of any case in which the United States is a party plaintiff, 28 U.S.C. § 1345, and it has been determined upon numerous occasions by the courts of our land that the Attorney General may sue on behalf of the United States by virtue of his office if the United States has an interest to protect. 28 U.S.C. §§ 516–519; Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407, and the cases therein cited.

Here, the interest of the United States is the enforcement of the terms and conditions of grants of Federal funds, namely, the $150,000,000 of Federal funds being channeled into the State of Alabama for administration and disbursement to needy American citizens by the agencies and the defendants here involved. This interest is not complicated, nor does its enforcement impose an onerous burden; it is only that those funds be administered by persons selected on the basis of their merit and fitness rather than on the basis of their race or color. As a matter of fact, the interest of the United States in these Federally financed programs may be so considerable that the Government, through its duly constituted officials, including the Attorney General of the United States, has a constitutional obligation to eliminate racial discrimination in their administration. Failure on the part of any of these Government officials to take legal action in the event that racial discrimination does exist—and, as stated earlier in this opinion, we must, for the purposes of measuring these motions to dismiss against the complaint, assume that it does exist—would constitute dereliction of official duty.

For purposes of emphasis, this Court will repeat that the argument by the defendants that the administrative remedy vested in the Federal officials to terminate the funds—the $150,000,000 flowing to various agencies in the State of Alabama—is an exclusive remedy, is without merit. The fact that an administrative remedy to terminate these funds is vested in the various Federal officials involved does not mean that this is the only action the Federal Government can take to eliminate the racial discrimination alleged. Termination of assistance as authorized by the Congress of the United States is only one of the means—this is a "means" that the Federal administrators are authorized to take of a nonjudicial nature; the other remedies traditionally available to enforce Federal statutory law were not divested by the granting of these administrative remedies. Furthermore, the granting of these statutory administrative remedies may not be considered exclusive unless the statutes contain clear and specific language to that effect. United States v. Wittek, 337 U.S. 346, 69 S.Ct. 1108, 93 L.Ed. 1406; United States v. Stevenson, 215 U.S. 190, 30 S. Ct. 35, 54 L.Ed. 153. See also Wyandotte Transportation Co. v. United States, 389

U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407, and United States v. Acme Process Co., 385 U.S. 138, 87 S.Ct. 350, 17 L.Ed.2d 249. The statutes now being considered by this Court and involved in this litigation contain no language showing, and the legislative history provides no showing, that Congress intended the administrative remedy of termination to be exclusive. If the argument of the defendants was sustained and this Court held that the administrative remedy of termination of assistance was the exclusive remedy, it would be drastic action, having the inevitable effect of injuring the very people that Congress intended to benefit and the very people that the State agencies here involved are set up to assist. In this connection, see Gardner v. State of Alabama, Dept. of Pensions & Security, 385 F.2d 804 (5th Cir. 1967), cert. denied 389 U.S. 1046, 88 S.Ct. 773, 19 L.Ed.2d 839.

Defendants' reliance upon United States v. Madison County Board of Education, 219 F.Supp. 60 (N.D.Ala.1963), aff'd on other grounds, 326 F.2d 237 (5th Cir. 1964), cert. denied 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341, is misplaced. Here, the United States is seeking to enforce the terms and conditions which Congress expressly imposed upon the expenditure of Federal funds. To put it another way, the United States is merely attempting to enforce the express terms and conditions which the State of Alabama agreed to meet in receiving Federal funds. There was no express obligation in the Madison County case of a contractual nature which the United States was seeking to enforce. Furthermore, see the discussion of United States v. Madison County Board of Education, *supra,* in Bossier Parish School Board v. Lemon, 370 F.2d 847, 850–851 (5th Cir. 1967).

Accordingly, the United States will be given an opportunity to prove the allegations in its complaint, and if it does so injunctive relief will be granted prohibiting the defendants from engaging in any racially discriminatory employment practice while administering any of the programs which are subject to Federal merit standards requirements. The motions to dismiss this complaint are, therefore, ordered to be and each is hereby denied.