[Cite as *Hope Academy v. White Hat Mgt., L.L.C.*, 2022-Ohio-178.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Hope Academy, Broadway Campus, et al., | : | |
| Plaintiffs-Appellees, | : | No. 20AP-475 |
| | | (C.P.C. No. 10CV-7423) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| White Hat Management, LLC, et al., | : | |
| Defendants-Appellees. | : | |
| [Ohio Department of Education, | : | |
| Defendant-Appellant.] | : | |

D E C I S I O N

Rendered on January 25, 2022

**On brief:** *Dinsmore & Shohl, LLP, Karen S. Hockstad, William M. Mattes, Nita L. Hanson,* and *Justin M. Burns,* for plaintiff-appellee *Hope Academy, Broadway Campus.* **Argued:** *Justin M. Burns.*

**On brief:** *Barnes & Thornburg, LLP, C. David Paragas, Jeanine Kerridge, William R. Martin,* and *Paul N. Garinger,* for defendant-appellee *White Hat Management, LLC.* **Argued:** *Jeanine Kerridge.*

**On brief:** *Dave Yost,* Attorney General, and *Todd R. Marti,* for appellant. **Argued:** *Todd R. Marti.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, the Ohio Department of Education ("ODE"), appeals from the March 19, 2020 decision of the Franklin County Court of Common Pleas granting the motion of plaintiffs-appellees Hope Academy Broadway Campus, et al. (collectively

"Schools") for summary judgment on ODE's counterclaims against them; the March 19, 2020 decision of the Franklin County Court of Common Pleas granting the motion of defendants-appellees, White Hat Management, LLC, et al. (collectively "White Hat"), for summary judgment on ODE's cross-claims against them; and the August 31, 2020 decision of the Franklin County Court of Common Pleas granting reconsideration of the trial court's June 30, 2020 order, which clarified the trial court's March 19, 2020 decision granting summary judgment in favor of plaintiffs-appellees on ODE's counterclaims.  For the reasons that follow, we reverse and remand.

## I.  Facts and Procedural History

{¶ 2}  This dispute arises out of ongoing litigation initiated by the governing boards of ten Cleveland community schools (collectively, the "Schools") in 2010.  Defendants-appellees are private for-profit companies White Hat Management, LLC, and WHLS of Ohio, LLC along with ten subsidiary companies that operated and managed the Schools pursuant to contracts with each of the ten community schools.  (*See Hope Academy Broadway Campus v. White Hat Mgmt., LLC*, 145 Ohio St.3d 29, 2015-Ohio-3716, ¶ 1) (*Hope Academy*).  In *Hope Academy*, the Supreme Court of Ohio succinctly set forth the background of the litigation as follows:

> As permitted by statute, see R.C. 3314.03, the governing authority of each school entered into an individual management agreement (collectively, "the contracts") in November 2005 with one of the ten named education-management organizations owned by White Hat. Each contract was substantially identical.
>
> Under the contracts, White Hat was paid either 95 or 96 percent of the revenue-per-student funding that the school received from the state of Ohio Department of Education pursuant to R.C. Title 33 and other applicable statutes. This fixed amount, sometimes characterized as a per-pupil payment, was known in the contract as the "Continuing Fee." In addition, all federal, state, and local government education grants were to be paid to White Hat.
>
> In return, White Hat agreed to provide all functions relating to the provision of the White Hat educational model and the day-to-day management and operation of the schools. The schools retained the right to perform their own accounting, financial

reporting, and audit functions, but White Hat was responsible for most other aspects of the operation of the schools, including providing a facility, meeting all staffing and academic needs, and purchasing all furniture, computers, books, and other equipment.

The various management contracts ran from November 1, 2005, until June 30, 2007, and provided for automatic renewal thereafter for consecutive one-year terms through June 30, 2010, unless terminated for cause. The schools did not perform well under White Hat's management. Of the ten original schools, as of the 2010-2011 school year, two Hope Academies had been shut down by the Department of Education due to academic failure and three were on "academic watch"; one of the Life Skills Centers was on academic watch and a second was on "academic emergency" (one step away from shut-down). This poor performance caused the schools to raise several issues, including how White Hat spent the money it received to operate the schools. Financial information revealed that White Hat spent money to purchase buildings ultimately owned by or renovated for the benefit of its own affiliates. According to the schools, although White Hat used part of the continuing fee to purchase personal property for use in the schools, it improperly titled that property in its own name.

The governing authorities of the schools filed the instant lawsuit on May 17, 2010, after White Hat refused to provide further information concerning the use of allegedly public funds. The complaint sought declaratory and injunctive relief, an accounting, and damages for breach of contract and breach of fiduciary duty.

*Hope Academy*, 2015-Ohio-3716, at ¶ 3-7.

{¶ 3} The State Board of Education, i.e., ODE, was also named as a defendant in the original complaint. *Hope Academy* at ¶ 1. ODE asserted counterclaims against the Schools consisting of a claim for the return of federal grant funds disbursed in violation of grant terms (the "Grant Claim"), and a separate claim seeking return of both federal grant funds and state funds disbursed in violation of the Schools' fiduciary duties (the "Trust Claim"). ODE also filed the same claims against White Hat via cross-claims. (*See* Jul. 6, 2010 Answer, Counter, & Cross-Cl.)

{¶ 4}    The Supreme Court's decision in *Hope Academy* was the result of an appeal from a decision of this court, *Hope Academy Broadway Campus. v. White Hat Mgt., LLC*, 10th Dist. No. 12AP-496, 2013-Ohio-5036, which concerned the issue of a disputed term in the contracts between the Schools and White Hat known as the "buy-back" term, wherein the parties disputed the ownership of personal property used by White Hat in the Schools' daily operations and wherein White Hat claimed the right to retain the personal property unless the Schools made certain payments to White Hat as provided for in the contracts. The Supreme Court affirmed the part of this court's decision that upheld the buy-back provision as enforceable against the Schools but reversed the part that found there was no fiduciary duty on the part of White Hat toward the Schools in using public funds to purchase personal property for use in the Schools that it operated.  The Supreme Court remanded the case to the trial court for an inventory of the property and its disposition pursuant to the terms of the contracts.  *See Hope Academy*, 2015-Ohio-3716.

{¶ 5}    Upon remand, the litigation continued.  With leave of the trial court,[1] ODE filed amended and supplemental cross and counterclaims wherein it reasserted its Grant and Trust claims.  *See* Apr. 25, 2016 ODE's Am. & Supp. Cross & CounterCl.  In their reply to the reasserted and supplemented counterclaims, the Schools asserted as one of its affirmative defenses that ODE lacked standing to bring the claims.  (*See* May 3, 2016, Pls.' Reply to Def. ODE's Am. & Supp. Cross & CounterCl. & Cross-Cl. against The White Hat Defs.)  Discovery, including multiple depositions, continued for well over two more years.

{¶ 6}    Eventually, the parties engaged in dispositive motion practice.[2]  Specifically, the Schools filed a motion for summary judgment on ODE's counterclaims on February 15, 2019; White Hat filed a motion for summary judgment on ODE's cross-claims on April 19, 2019[3]; and ODE filed a motion for partial summary judgment on April 18, 2019.

{¶ 7}    On March 19, 2020, the trial court issued several decisions providing rulings on the foregoing motions.  The first of these was a combined decision and entry granting

---

[1] Notably, the trial court granted such leave via an agreed order signed by all parties.  *See* Apr. 19, 2016, agreed order granting the motion to file amended complaint submitted by plaintiffs and the motion to file amended and supplemental cross and counterclaims submitted by the ODE.

[2] This was actually the second round of dispositive motion practice.

[3] White Hat previously had filed a motion to dismiss ODE's cross-claims on May 3, 2016.

plaintiffs/counterclaim defendants motion for summary judgment on the ODE's counterclaims and decision and entry denying the ODE's motion for partial summary judgment (collectively, March 19, 2020 Decision & Entry I). In this decision, the trial court found there was no waiver by the Schools of the affirmative defense of real party in interest and further, that ODE was not the real party in interest and thus lacked standing to pursue its Trust Claims, at least as to the federal funds. The court's decision provides, in pertinent part, as follows:

> The Court finds that the 2016 Amended and Supplemental Counterclaim is the operative pleading because it replaced the original Counterclaim filed in 2010. The parties agree that by the time ODE filed its Counterclaim in 2016, it no longer had the right to retain any recovered grant funds. Moreover, because Plaintiffs raised a standing defense in their Answer to the 2016 Amended and Supplemental Counterclaim, the Court finds that they did not waive the defense.
>
> Upon review, the Court finds that DOE [sic] is no longer the real party in interest and lacks standing to assert the grant claims against Plaintiffs because it has [sic] no longer has the right to retain any recovered grant funds. Moreover, evidence in the record demonstrates that OSDOE has not sought the return of the grant funds even though the funds sought are from fiscal years 2006-2013. The Court further finds that none of the joinder exceptions in Civ.R. 17(A) apply here.
>
> ODE had a reasonable opportunity to seek ratification, joinder, or substitution of USDOE following the filing of Plaintiffs' Motion for Summary Judgment. However, ODE has failed to so join or substitute USDOE. Accordingly, the Court finds that Plaintiff's [sic] Motion for Summary Judgment is well-taken, and is hereby **GRANTED**.
>
> Accordingly, as the Court finds that ODE lacks standing to proceed against Plaintiffs, the Court also finds that ODE's Motion for Partial Summary Judgment as to its Fifth Claim for Violation of Grant Conditions/Public Official Liability under R.C. 9.39 is not well-taken, and is hereby **DENIED**.

(Emphasis in original.) (Mar. 19, 2020 Decision & Entry I at 5.)

**{¶ 8}** The second decision issued on March 19, 2020, was a combined decision and entry granting defendants' motion to dismiss ODE's cross-claims, decision and entry

granting defendants' motion for summary judgment on ODE's cross-claims, and decision and entry denying ODE's motion for partial summary judgment (collectively, Mar. 19, 2020 Decision & Entry II). In this decision, the trial court reiterated its finding that ODE "is not the real party in interest and does not have standing to assert its Counterclaims against Plaintiffs." *Id.* at 1. The trial court continued, stating:

> [f]or similar reasons, the Court finds that ODE is not the real party in interest and lacks standing to assert its Crossclaims against the White Hat Defendants. Accordingly, the White Hat Defendants' Motion to Dismiss and Motion for Summary Judgment are **GRANTED**. ODE's Motion for Partial Summary Judgment is **DENIED**.

(Emphasis in original.) (Mar. 19, 2020 Decision & Entry II at 1-2.)

{¶ 9} Subsequently, at a status conference conducted by the trial court on April 1, 2020, the parties sought clarification of the March 19, 2020 decision and entry I because it did not appear to address ODE's Trust Claim as it pertained to the state funds. *See* June 30, 2020 Order. Thus, on June 30, 2020, the trial court issued a one-page order which found as follows:

> [u]pon review, the Court finds that the parties did not assert that ODE lacks standing as to the claim for declaration of public trust over the state funds. Moreover, the Court finds that an issue of fact remains for trial as to whether ODE's claim is barred by the doctrine of ratification. As such, the grant of summary judgment against ODE applies only to the claim as it relates to federal grant funds.

(June 30, 2020 Order at 1.)

{¶ 10} Apparently, the Schools were not satisfied with this ruling, because they filed a motion for reconsideration. (*See* Jul. 10, 2020 Mot. for Recons.) On August 31, 2020, the trial court issued a one-page decision and entry granting plaintiffs' motion for reconsideration of the trial court's June 30, 2020 order, which stated:

> [u]pon careful review, the Court finds that Plaintiffs' summary judgment motion addressed ODE's claim for Declaration and Enforcement of Public Trust as to both federal and state funds. In its memorandum in opposition, ODE either conceded that its trust claim only encompasses federal funds, or abandoned its trust claim as to state funds. Thus, the Court hereby

reconsiders its June 30, 2020 Order and finds that summary judgment against ODE applies to the trust claim in whole.

(Aug. 31, 2020 Decision & Entry at 1.)

{¶ 11} Subsequently, on September 18, 2020, the trial court issued an order providing for Civ.R. 54(B) certification of the two decisions rendered on March 19, 2020 and the August 31, 2020 decision granting the Schools' motion for reconsideration.

{¶ 12} This timely appeal followed.

## II. Assignments of Error

{¶ 13} ODE assigns three errors for our review:

[I.] The Trial Court erred when it held that the Plaintiff Schools did not waive their real party in interest Defense.

[II.] The Trial Court erred when it held that the Ohio Department of Education ("ODE") was not the real party in interest to ODE's claims to recover federal grant funds.

[III.] The Trial Court erred by holding that ODE abandoned the portion of its trust claim that was based on the Plaintiff Schools' State funding.

## III. Discussion and Legal Analysis

### A. Standard of Review

{¶ 14} An appellate court reviews summary judgment under a de novo standard. *You v. Northeast Ohio Med. Univ.*, 10th Dist. No. 17AP-426, 2018-Ohio-4838, ¶ 16, citing *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567, ¶ 19, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995). Summary judgment is proper only when the parties moving for summary judgment demonstrate (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds viewing the evidence most strongly in favor of the nonmoving party could reach but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181 (1997).

{¶ 15} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the

record demonstrating the absence of a genuine issue of material fact by pointing to specific evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the nonmoving party responds, by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle,* 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 16} A fact is "material" if it "might affect the outcome of the suit under the applicable substantive law." *Mitchell v. Mid-Ohio Emergency Servs., L.L.C.*, 10th Dist. No. 03AP-981, 2004-Ohio-5264, ¶ 12.  A "genuine" issue of material fact exists to prevent summary judgment only if "a reasonable jury could find that the evidence satisfies the evidentiary standards required at trial." *Myocare Nursing Home, Inc. v. Fifth Third Bank*, 98 Ohio St.3d 545, 2003-Ohio-2287, ¶ 33.

{¶ 17} Finally, "[t]rial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

## B.  Appellant's First Assignment of Error

{¶ 18} In its first assignment of error, ODE asserts the trial court erred by finding the Schools did not waive their real party in interest defense.  We do not agree.

{¶ 19} ODE's argument in support of its theory of waiver consists of two parts: first, the Schools waited until the case had been pending in the trial court for six years prior to asserting their affirmative defense of lack of standing[4]; and second, the Schools waited

---

[4] Although the concepts of standing and real party in interest are not one in the same, the two terms and their underlying principles are used interchangeably in some cases.  *See Mousa v. Mt. Carmel Health Sys.*, 10th Dist. No. 12AP-737, 2013-Ohio-2661, ¶ 12, citing *Pinzone v. Pinzone*, 11th Dist. No. 2011-L-133, 2012-

almost three more years prior to filing a dispositive motion on the issue of ODE's standing to pursue its counterclaims against the Schools. Neither part of this argument has merit.

{¶ 20} With regard to the first part of ODE's argument, "[i]t is well-settled that an amended pleading supersedes the original pleading." *Morris v. Morris*, 10th Dist. No. 10AP-15, 2010-Ohio-4750, ¶ 32, citing *Abram & Tracy, Inc. v. Smith*, 88 Ohio App.3d 253, 263 (10th Dist.1993); *Carlock v. Coleman*, 7th Dist. No. 89 C.A. 121, 1990 Ohio App. LEXIS 3625 (Aug. 22, 1990), quoting 75 Ohio Jurisprudence 343, Pleading, Section 469 (" 'it is hornbook law that an amended pleading supersedes the original, the latter being [treated] thereafter as nonexistent' "). "Therefore, an amended pleading opens the door for defending parties to raise new affirmative defenses." *Id.*, citing *Fitzpatrick v. Potter*, S.D.Ohio No. 1:04-CV-369 (Oct. 14, 2005).

{¶ 21} In *Morris*, we determined that the trial court erred when it found the appellant had waived its arbitration defense by failing to assert it in response to the original pleading filed by appellees because appellees had later filed amended counterclaims and cross-claims, effectively abandoning their prior pleading. Here, as in *Morris*, when ODE filed its amended and supplemental cross and counterclaims on April 25, 2016, its amended cross-claims against the Schools took the place of its original cross-claims filed in 2010, thus opening the door for the Schools to assert their affirmative defense of lack of standing. In light of ODE's amended–and therefore superseding–pleading, there is no waiver of the standing defense merely because it was not asserted in response to ODE's original pleading.

{¶ 22} Likewise, with regard to the second part of ODE's argument, there is no waiver of the standing defense merely because the Schools chose not to file a dispositive motion on this issue until February 2019. ODE has cited no authority in support of its novel proposition that failing to file a dispositive motion on the issue of the standing defense earlier than the date required by the trial court's case management order results in waiver, nor was this court able to identify any such authority. Furthermore, as urged by the

---

Ohio-6126, ¶ 16. Moreover, in this case none of the parties argues the affirmative defense of lack of standing asserted by the Schools does not also encompass the affirmative defense of lack of real party in interest. Thus, for purposes of this matter we likewise treat the two terms interchangeably.

Schools, ODE itself could just as readily moved for the trial court to address the issue of the standing defense sooner, yet the record evinces no such action on the part of ODE.

{¶ 23} In short, ODE made a tactical decision to seek leave to amend its counterclaims against the Schools. Leave was granted in the form of an agreed order signed by the parties, including ODE. The amended counterclaims took the place of the original counterclaims, giving the Schools free rein to assert new defenses, including the defense of lack of standing. There simply is no waiver of this defense in this case.

{¶ 24} Accordingly, based on the foregoing discussion, we overrule ODE's first assignment of error.

## C. Appellant's Second Assignment of Error

{¶ 25} In its second assignment of error, ODE asserts the trial erred when it held that ODE was not the real party in interest to ODE's claims to recover federal grant funds. We agree.

{¶ 26} As the Supreme Court has explained, "[a]t common law, all actions had to be brought in the name of the person holding legal title to the right asserted, and individuals possessing only equitable or beneficial interests could not sue in their own right." *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 30, citing Clark & Hutchins, *The Real Party in Interest*, 34 Yale L.J. 259 (1925); 6A Wright, Miller & Kane, *Federal Practice and Procedure*, Section 1541 (2010). "However, the practice in equity relaxed this requirement, and states later abrogated the common-law rules and adopted 'rules that permitted any "real party in interest" to bring suit.' " *Schwartzwald*, quoting *Sprint Communications Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 279, (2008)[5].

{¶ 27} The rule adopted in Ohio that permits any real party in interest to bring suit is Civ.R. 17(A) which provides:

> Every action shall be prosecuted in the name of the real party
> in interest. An executor, administrator, guardian, bailee,
> trustee of an express trust, a party with whom or in whose name
> a contract has been made for the benefit of another, or a party
> authorized by statute may sue in his name as such

---

[5] In *Schwartzwald*, the Supreme Court held that in a foreclosure action, the lack of standing at the commencement of the lawsuit could not be cured pursuant to Civ.R. 17(A) by obtaining an interest in the subject of the litigation via subsequent assignment of a promissory note and mortgage and then substituting itself as the real party in interest.

representative without joining with him the party for whose benefit the action is brought. When a statute of this state so provides, an action for the use or benefit of another shall be brought in the name of this state. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

{¶ 28} The plain language of Civ.R. 17(A) makes clear that a real party in interest includes "a party with whom or in whose name a contract has been made for the benefit of another." And, as is more fully explained below, we agree with ODE that the Assurances made by the Schools is a contract with ODE which has been made for the benefit of another–i.e., the United States Department of Education ("USDOE").

{¶ 29} "Federal grants authorized by Congress create binding contracts." *United States v. Sumter Cty. School Dist.*, 232 F.Supp. 945, 950 (D.S.C.1964). In *Sumter Cty. School Dist.*, the court determined that "[t]he applications for financial assistance by the School District and the approval of such applications, together with the commitment of Federal funds by the Commissioner, contain all the elements of a contract." (Further citations omitted.) *Id.* The terms of the contract are set forth in the "assurances" given by the recipient of the grant. *See id.*, fn. 2. Other courts have found such assurances given in exchange for federal grant funds are contractual in nature. *See, e.g., United States v. Onslow Cty. Bd. of Edn.*, 728 F.2d 628, 633 (4th. Cir.1984); *United States v. Marion Cty. School Dist.*, 625 F.2d 607, 609-10 (5th Cir.1980); *United States by Clark v. Frazer*, 297 F.Supp. 319, 322 (M.D. Ala.1968.) Thus, the Assurances given by the Schools in exchange for receiving federal grant funds most certainly constitute a contract.

{¶ 30} Furthermore, a review of the plain text of the Assurances shows that USDOE benefits from the Assurances. The introductory paragraph clearly identifies both the "Ohio Department of Education" and the "United States Department of Education" as "parties referred to in this document * * *." Importantly, many of the obligations imposed by the Assurances inure to the benefit to USDOE, including requirements that the Schools comply with federal regulations concerning expenditure of the federal funds (Ex. 6, Assurances at

¶ 3, 34, 37, attached to Def's. Apr. 18, 2019 App'x. ); requirements that the Schools maintain specific records of how the grant funds are used *Id.* at ¶ 7, 24; requirements that the Schools report to and cooperate with USDOE in connection with evaluations and audits and to enable USDOE to perform its duties *Id.* at ¶ 6, 7, 18; and requirements that the Schools comply with a broad array of federal regulations and statutes evincing federal policy preferences that would otherwise be inapplicable to the Schools. *Id.* at ¶ 12, 13, 22, 29, 32, 35, 41, 43.

{¶ 31} Moreover, paragraph 31 of the Assurances specifically provides that the Schools (as Subgrantee) agree "that the [USDOE] *or* ODE have the authority to take administrative sanctions * * * as necessary to ensure compliance with applicable laws, regulations and assurances for any project" and that the Schools "acknowledge such authority under 34 CFR 80.43, 34 CFR 74.62 and Ohio Revised Code Section 3301.07(C), as applicable." (Emphasis added) (Assurances at ¶ 31.) This term provides additional support for the conclusion that USDOE benefitted from the Assurances and that ODE was a real party in interest because it is a "party with whom or in whose name a contract has been made for the benefit of another." Civ.R. 17(A).

{¶ 32} We reject the Schools' contention that ODE cannot be a real party in interest because any federal grant funds that might be recovered must be returned to USDOE. Such a position entirely misses the point of the Civ.R. 17(A) designations of "executor, administrator, guardian, bailee, trustee, of an express trust, and a party with whom or in whose name a contract has been made for the benefit of another," each of whom is specifically defined to be a real party in interest. It cannot be disputed that each of the foregoing types of parties would be required to remit any recovered funds to the estate, ward, property owner, trust, or beneficiary of the contract, respectively, yet the rule itself specifies that these categories of claimants are indeed "real parties in interest." And federal courts[6] have consistently held that, pursuant to the real party in interest rule, an "action does not have to be brought by one who will ultimately benefit from the recovery." *Mitsui*

---

[6] The Ohio Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure; therefore, "federal law interpreting the federal rule is appropriate and persuasive authority in interpreting a similar Ohio rule." *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St. 3d 329, 2015-Ohio-3430, ¶ 24, citing *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, ¶ 18, citing *Myers v. Toledo*, 110 Ohio St.3d 218, 2006-Ohio-4353, ¶ 18, and *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201 (1987).

*& Co. v. Puerto Rico Water Resources Auth.*, 528 F.Supp. 768, 776 (D.P.R.1981); *see also* Wright & Miller, 6A *Federal Practice and Procedure*, Section 1543 (3d Ed.) ("The purpose of the listing is to provide guidance * * * and to emphasize the fact that the real party in interest might not be the person beneficially interested in the potential recovery.").

{¶ 33} Finally, contrary to the protestations of the Schools, there is no threat of double liability to USDOE in this case. It is true that one of the purposes of the real party in interest rule is " ' "to assure [the defendant] finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter." ' " *Schwartzwald*, 2012-Ohio-5017, at ¶ 32, quoting *Shealy v. Campbell*, 20 Ohio St.3d 23, 24-25 (1985), quoting *Celanese Corp. of America, v. John Clark Industries*, 214 F.2d, 551, 556 (5th Cir.1954).   In this case, however, as urged by ODE, finality of the judgment will be assured for two reasons.  One, because the USDOE is a successor in interest to any recovery of the federal grant funds, it will be bound by the judgment.  *See, e.g., Barker v. Jackson Natl. Life Ins. Co.*, 163 F.R.D. 364, 366 (N.D.Fla.1995) ("Even if not named, successors in interest are always bound by the judgment.").  Two, the USDOE would not be able to bring a future lawsuit in any event due to the expiration of the applicable statute of limitations as of June 30, 2013, when the last federal grant funds were spent by the Schools.  20 U.S.C. Section 1234a(K); *see California Dept. of Edn. v. Bennett*, 851 F.2d 241 (9th Cir.1988) (construing the predecessor statute).

{¶ 34} Therefore, for the foregoing reasons, we find that ODE is the real party in interest of ODE's claims to recover federal grant funds.  Accordingly, we sustain ODE's second assignment of error.

### D.  Appellant's Third Assignment of Error

{¶ 35} In its third assignment of error, ODE asserts the trial court erred by holding that ODE abandoned the portion of its Trust Claim that was based on the Schools' state funding.  We agree.

{¶ 36} Ohio jurisprudence provides little, if any, guidance on the issue of claim abandonment in the context of dispositive motion practice.[7]  Indeed, our research identified

---

[7] In contrast, the issue of claim abandonment in the context of bankruptcy proceedings appears to be more widely addressed by Ohio courts.  These two concepts are completely different from one another; therefore, these types of cases are of no aid to us.  This includes the case cited by the Schools for the proposition that

no Ohio case at the appellate or higher level which addresses this issue head-on. But Federal courts, including those in Ohio, have dealt with this issue with some regularity, and we find the authority promulgated by them informative. The Sixth Circuit Court of Appeals has spoken on this subject as follows:

> This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment. *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir.2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir.2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24-25 (6th Cir.2003); *see also Colston v. Cleveland Pub. Library*, No. 1:12-CV-204, 2012 U.S. Dist. LEXIS 113527, 2012 WL 3309663, at *2 n. 2 (N.D. Ohio Aug. 13, 2013) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond or even mention [the] claim in her opposition to Defendants' motions for summary judgment").

*Brown v. VHS of Michigan, Inc.*, 545 Fed.Appx. 368 (6th Cir.2013). *See also Abdulsalaam v. Franklin Cty. Bd. of Commrs*, 637 F.Supp.2d 561, 578 (S.D.Ohio 2009) ("Plaintiffs do not clearly respond to that argument in their brief and that failure alone warrants summary judgment in Defendants favor on that issue") citing *Dage v. Time Warner Cable*, 395 F.Supp.2d 668, 679 (S.D.Ohio 2005) (plaintiff abandoned claim by failing to address it in his responsive brief).

{¶ 37} With the foregoing guidance in mind, our task is to determine whether ODE failed to properly address and respond to the arguments of the Schools pertaining to the Trust Claim. As explained below, our review of the parties' dispositive motion briefs filed in the trial court leads us to the conclusion that the memorandum in opposition filed by ODE in response to the Schools' motion for summary judgment did not fail to properly address or respond to the arguments made by the Schools on this claim.

---

our review of this assignment of error is de novo. *See McLynas v. Karr,* 10th Dist. No. 03AP-1075, 2004-Ohio-3597. While we agree that the standard of review is de novo, this case is wholly inapposite to the instant matter.

{¶ 38} As asserted by ODE, the Schools' arguments presented in their motion for summary judgment focused virtually exclusively on the federal grant funds at issue in this case. Indeed, the opening paragraph of the Schools' motion for summary judgment summarizes its arguments thus:

> [t]he undisputed facts demonstrate that *the funds at issue are federal funds* that will not escheat to ODE of the State of Ohio, even if ODE proves that the Schools violated the grant conditions. Therefore, ODE is not a real party in interest and lacks standing to bring its claims for those funds.

(Emphasis added.) (Feb. 15, 2019 Pl.'s/Countercl. Def.'s Mot. for Summ. Jgmt. on the ODE's Countercls, at 1.) Within the body of the Schools' motion under section III titled "Argument," subsection A presents an argument that "ODE lacks standing to assert its claim for the *federal grant funds* because it no longer possesses an interest in those funds." (Emphasis added.) *Id.* at 8. Nowhere in this subsection is there any mention of the state operating funds at issue in this case.

{¶ 39} Subsection C presents the Schools' argument specifically pertaining to ODE's Trust Claim, asserting that "ODE's lacks [sic] standing to bring its claim for declaration and enforcement of public trust over all public funds and property and property purchased with public money, and ODE ratified the Schools' conduct." *Id.* at 11. Regarding the first part of this argument, the Schools assert that "ODE lacks standing to assert a claim for breach of trust because the trust property at issue is *federal funds*," and "the *grant funds* at issue are *federal funds* issued by the *federal government.*" (Emphasis added.) *Id.* at 12. Again, the Schools' standing/real party in interest argument pertains solely to the federal grant funds—not the state funds.

{¶ 40} Regarding the second part of the argument in subsection C, the Schools assert that even if ODE possessed standing to assert its Trust claim, the accrued actions of ODE over the years amounted to a ratification of the Schools' conduct, thus barring its breach of Trust claim. *Id.* at 12. Other than one, singular reference to the state funds transferred to the Education Management Operators ("EMOs"), which is not expounded upon in any manner, the remainder of this argument—spanning almost two full pages—refers solely to the federal grant funds. *Id.* at 12-14. ("ODE held a meeting * * * to discuss how to account

for the transfer of *grant money* * * *"; "[t]he State of Ohio took it a step further to advise the Schools on how to book carryover from the *grants*, since Management Agreements 'indicate[] 100% of *federal revenue* goes to White Hat'; the Schools * * * continued to transfer tens of millions of dollars in *grant funds* to the EMOs".) (Emphasis added.)

{¶ 41} It defies simple logic to expect that ODE would proactively defend the state funds portion of the Trust Claim in the face of the foregoing arguments made by the Schools. Nor do the Schools cite to any authority that would support its proposition that ODE was required to affirmatively defend the state funds portion of the Trust Claim despite the fact that the Schools presented arguments pertaining only to the federal funds portion. Furthermore, we agree with ODE's contention that in any event, the substance of its response to the Schools' ratification argument applied with equal force to both the state operating funds and the federal grant funds aspects of the Trust Claim.

{¶ 42} In short, when the Schools presented their arguments pertaining to the Trust Claim, they focused solely on the federal grant funds portion of the Trust Claim, and ODE properly addressed these arguments in its memorandum in opposition. The opening gambit was played by the Schools, and ODE responded in kind. Under the circumstances, particularly when viewed through a lens which requires the trial court to grant summary judgment with caution, giving the nonmoving party the benefit of the doubt, we find it was error on the part of the trial court to conclude that ODE abandoned that portion of its Trust Claim which was predicated on state operating funds.

{¶ 43} Accordingly, based on the foregoing discussion, we sustain ODE's third assignment of error.

## IV. Disposition

{¶ 44} Having overruled appellant's first assignment of error and having sustained appellant's second and third assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter for further proceedings consistent with this decision.

*Judgment reversed; cause remanded.*

SADLER and JAMISON, JJ., concur.